UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS TRANCIK, <br> JOANN TRANCIK, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF CARMEL, INDIANA; <br> JAMES BRAINARD, MAYOR OF <br> CARMEL, INDIANA; and the <br> CITY OF CARMEL BOARD OF PUBLIC <br> WORKS, <br><br> Defendants. | 1:12-cv-01264-RLY-MJD |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

Defendants, the City of Carmel, Indiana; the Mayor of Carmel, James Brainard; and the City of Carmel Board of Public Works, move to dismiss the federal claims and for remand of the state law claims alleged in the Plaintiffs' Complaint. For the reasons set forth below, the motion is **GRANTED**.

**I.      Dismissal Standard**

Defendants bring their motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The purpose of this motion is to test the legal sufficiency of the complaint, not the merits of the lawsuit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

1

*Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*. at 1964-65.

In evaluating a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004). In addition, the court may consider documents that are referred to in the complaint and are central to the plaintiff's claim. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (citations omitted). Here, the Tranciks attached documents designated as Exhibits A-I to their Complaint. In accordance with Seventh Circuit case law, the court considers those exhibits as a part of the pleadings.

To the extent Defendants move to dismiss the Complaint because the claims are not ripe for review, Defendants motion is one for lack of subject matter jurisdiction, and falls under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Flying J v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008) (ripeness is a question of subject matter jurisdiction). In considering a Rule 12(b)(1) motion, the court "accept[s] as true all well-pleaded factual allegations, and draw[s] all reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993)). A Rule 12(b)(1) motion differs from a Rule 12(b)(6) motion in that the court "may properly look beyond the jurisdictional allegations of the

complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id*.

## II. Background

The parties filed a Stipulation Regarding Certain Claims after the Defendants' motion was fully briefed. Thus, in addition to Plaintiffs' well-pleaded factual allegations, the stipulated facts relevant to this motion are included in the court's Background Section.

### A. Consent to Encroach

The Plaintiffs, Thomas and Joann Trancik, live next door to Neal Smith and Sandra Throgmartin (the "Smiths") in Carmel, Indiana. (Compl. ¶¶ 1, 5, 6, 7). The boundary line between their homes is the center line of a twenty foot drainage, sanitary, and utility easement reserved for and subject to "the installation of water and sewer mains, poles, ducts, lines, and wires, subject at all times to the proper authorities . . ." (*Id.* ¶ 9).

In 2005, the Smiths constructed large additions to their home without obtaining building permits or code inspections. (*Id.* ¶¶ 10-11). This construction altered the natural water flow, creating drainage problems on the Smiths' property. (*Id.* ¶ 12). The Smiths hired BAM Outdoor, Inc. to fix these problems. BAM removed four triaxle dump truck loads of soil from the Tranciks' property, altered the natural grade of the Tranciks' property, damaged the Tranciks' landscaping and lawn, and installed subsurface pipes running from the Smiths' property to the Tranciks' property, all without the Tranciks' consent or any permits or approvals. (*Id.* ¶¶ 13-17). The Tranciks demanded that the

subsurface pipes be removed and that the Smiths restore the Tranciks' property to its original condition, but the Smiths refused. (*Id*. ¶ 18).

In August 2009, the Smiths and the City of Carmel entered into a "Consent to Encroach" agreement with the City of Carmel Board of Public Works. (*Id*., Ex. C). The document was signed by Mayor Brainard, as presiding officer of the Board of Public Works, and two other members of the Board. (*Id*.). The agreement acknowledged that the Smiths installed a subsurface drain pipe that encroached the drainage and utility easement, and the City consented to the encroachment upon the easement, reserving its right to remove the pipe as necessary to install or repair utility lines, sewer lines, or drainage ditches within the easement. (*Id*.). In the agreement, the Smiths represented that the pipe had been installed on the Tranciks' property "without objection." (*Id*. ¶ 27). This was representation was false. (*Id*.). The Consent to Encroach was recorded on September 1, 2009. (*Id*. ¶ 28).

The Tranciks became aware and had a copy of the Consent to Encroach no later than February 26, 2010. (*See* Stipulation Regarding Certain Claims ¶ 7).

### B. Ordinance Enforcement Proceeding

Starting on September 14, 2011, the Tranciks had topsoil delivered to their property with the purpose of reestablishing the natural grade and topography of their property. (*Id*. ¶ 29). The Tranciks believe that the Smiths complained to the City regarding the same. (*Id*. ¶ 30). On September 22, 2011, the City posted a stop work order, but the Tranciks continued to have soil delivered after that date. (*Id*. ¶ 29). On October 5, 2011, the City issued a Notice of Correction Order asserting that the creation

of a berm along the property line violated the city code in several respects, including blocking and altering the water flow. (*Id*. ¶ 32 and Ex. E). The Order directed the Tranciks to restore the preexisting easement limits and submit plans for future activity for review and approval. (*Id*., Ex. E). The Order gave notice of the Tranciks' right to appeal to the Board of Public Works. (*Id*.).

On October 11, 2012, the Tranciks demanded rescission of the Notice of Correction Order and, on October 17, 2012, filed a Notice of Appeal to the Carmel Board of Public Works. (*Id*., Exs. F, G).

An appeal hearing before the Board was convened on February 1, 2012, presided over by Mayor Brainard. (*Id*. ¶¶ 35-37). The Tranciks moved for the Mayor to recuse himself on the grounds that he was a material witness, he authorized and participated in the matter, and he had a "direct conflict of interest" because his unlawful conduct was being challenged. (*Id*. ¶ 38). During the hearing, Mayor Brainard asked the parties if they would be willing to mediate the matter with him serving as mediator. (*Id*. ¶ 39). The Tranciks agreed if certain conditions were satisfied, but those conditions were not satisfied. (*Id*. ¶¶ 40-41).

The hearing was reconvened on June 20, 2012. The Tranciks did not receive notice of the hearing from the Board or the City; they learned of the hearing through opposing counsel and attended the hearing. (*Id*. ¶¶ 42, 44). Mayor Brainard asked the Tranciks under oath why they had not engaged in the mediation he had proposed; the Tranciks' counsel instructed them not to respond. (*Id*. ¶ 46; *see also id.*, Ex. H). An exchange ensued between Mayor Brainard and the Tranciks' counsel. (*Id*., Ex. H). At

the end of the short hearing, the parties agreed that the hearing could be rescheduled for July 18, 2012.  (*Id*., Ex. H at 54-56).  The hearing was later vacated. (*Id*. ¶ 48).

Plaintiffs thereafter filed a written motion renewing their motion for appointment of a neutral hearing officer.  On December 19, 2012, the Board granted that motion and a neutral hearing officer was appointed. (*See* Stipulation Regarding Certain Claims ¶ 4).

On August 6, 2012, the Tranciks filed the present five-count Complaint in the Hamilton Superior Court alleging violations of state and federal law.  They are:

> Count I:  Declaratory Judgment with respect to the scope of the utility easement, the validity of the Consent to Encroach, the legality of Carmel's stop-work and notice of correction orders, the validity of the Mayor's questioning of the Tranciks at the June 20 hearing, and whether the Board must appoint neutral hearing officers in place of its current members.
>
> Count II:  Writ of Mandate compelling the Board to appoint "neutral hearing officers" to hear the Tranciks' appeal and to rescind the Consent to Encroach.
>
> Count III:  Violation of Due Process and Equal Protection, asserting that the defendants' actions violated Article 1, § 21 of the Indiana Constitution, and seeking damages and attorney fees.
>
> Count IV:  Inverse Condemnation, asserting that the Consent to Encroach was a taking of the Trancik's property without due process or just compensation.
>
> Count V:  Claims for Damages under 42 U.S.C. § 1983, based on the same civil rights violations asserted in Count III.

Defendants removed the action to this court on grounds of federal question jurisdiction.  They seek dismissal of only the federal claims, and ask the court to remand the Indiana state law claims.

### III.     Discussion

The appointment of a neutral hearing officer to hear the Tranciks' appeal moots that part of Count I that seeks a declaratory judgment that the Board must appoint one; moots that part of Count II which requests a writ of mandate to appoint one; and moots that part of Count III which alleges the Board violated the Tranciks' due process rights by failing to appoint one.

Defendants first argue that the Tranciks' claims based on the 2009 Consent to Encroach are barred by the applicable statute of limitations. In the alternative, Defendants argue that even if the claims are timely, the Consent to Encroach did not violate any federal constitutional rights. Second, Defendants argue that the Tranciks' claims based on the pending code enforcement claim are not ripe for adjudication, but even if they were, Defendants did not violate their federal constitutional rights. The court now turns to Defendants' statute of limitations argument.

### A.     Statute of Limitations

The Trancik's claims are actionable, if at all, pursuant to 42 U.S.C. § 1983. Claims brought pursuant to Section 1983 "are subject to the statute of limitations for personal injury actions in the state in which the alleged injury occurred." *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (citations omitted). This is because a Section 1983 claim is characterized as an "action for injury to personal rights." *Wilson v. Garcia*, 471 U.S. 261, 265 (1985), *superseded by statute on other grounds*, 28 U.S.C. § 1658(a). In Indiana, the statute of limitations for bringing personal injury actions is two years; therefore, the statute of limitations on

Plaintiffs' Section 1983 claim is also two years. IND. CODE 34-11-2-4 (2009); *Jackson v. Kotter*, 541 F.3d 688, 699 (7th Cir. 2008) (citing *Bailey v. Faulkner*, 765 F.2d 102, 103 (7th Cir. 1985)).

Although the length of the limitations period is determined by state law, federal law dictates the accrual date of the cause of action. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). A Section 1983 claim begins "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Behavioral Inst. of Ind., LLC*, 406 F.3d at 929. In determining the accrual date of a Section 1983 case, the court: (1) identifies the injury, and, once that is done, (2) determines the date on which the plaintiff could have first brought suit on the injury. *Id*.

The Consent to Encroach was executed on August 19, 2009, and recorded on September 1, 2009. The Tranciks stipulated that they became aware of the Consent to Encroach no later than February 26, 2010, more than two years before they filed the present Complaint on August 6, 2012. In an effort to avoid the statute of limitations, the Tranciks invoke the doctrines of continuing wrong and of fraudulent concealment.

The doctrine of continuing wrong allows a plaintiff to bring an otherwise time-barred claim by linking it with acts that fall within the limitations period. *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010). The doctrine applies to a series of acts considered collectively; it does not apply to discrete acts, each of which is sufficient on its own to give a plaintiff notice of his or her alleged injury. *Id*. The adoption of the Consent to Encroach was a discrete act alleged by the Tranciks to have caused them

injury. Accordingly, the doctrine of continuing wrong has no application to the present case.

The doctrine of fraudulent concealment "'presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant – above and beyond the wrongdoing upon which the plaintiff's claim is founded – to prevent the plaintiff from suing on time.'" *In re Copper Antitrust Lit.*, 436 F.3d 782, 791 (7th Cir. 2006) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). A plaintiff seeking to toll the statute of limitations for fraudulent concealment "must show 'that he neither knew nor, in the exercise of due diligence, could reasonably have known of the offense.'" *Id*. (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95 (1997)).

The Tranciks stipulated that they were aware of the Consent to Encroach no later than February 26, 2010, when their counsel referenced it and attached a copy of it to a tort claim notice sent to the City of Carmel. (Stipulation Regarding Certain Claims ¶ 7). The tort claim notice: (1) gave an account of the property dispute between the Tranciks and the Smiths, including the events leading up to the City's issuance of the Consent to Encroach; (2) asked the City to investigate the property dispute and to provide the Tranciks with the City's position; (3) relayed the Tranciks' belief that the Consent to Encroach "was issued without notice to and without the consent of [the Tranciks]"; and (4) informed the City that it did not "possess[] the authority to issue the Consent. . . ." (*Id*.). It also notified the City of the following tort claims: "[t]respass, taking of private property without notice or compensation, denial of procedural and substantive due

9

process, violation of open door law, injury to real property and negligence." (*See* Defendants' Ex. 2). For the Tranciks to contend that they were, nevertheless, unaware of the facts and circumstances giving rise to the Consent to Encroach as of February 26, 2010, is belied by the record and simply not credible. (*Id.*). Accordingly, all federal claims arising out of the Consent to Encroach, asserted in Counts I and II, are barred by the statute of limitations.

### B. Code Enforcement Proceeding

The Tranciks also bring due process and equal protection claims against the City regarding the pending code enforcement proceeding. Defendants contend these claims are not ripe for adjudication until the following three conditions are met: (1) the City, through the Board, makes a final decision; (2) the Tranciks (or the City) appeal the Board's decision to the appropriate court of law by writ of certiorari; and (3) the appellate court renders a final decision. (*See* Defendants' Appendix A, Carmel City Code, Article 8, § 6-220(h)).

In *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court delineated the ripeness requirements imposed on a property owner's claim that governmental action amounted to a "taking" of property. First, there must be a "final decision" on the part of the governmental entity charged with implementing the relevant regulations. *Id*. at 186. Second, the property owner must exhaust all state procedures for obtaining compensation before filing in federal court, including an action for inverse condemnation in state court. *Id*. at 196-97. Substantive due process claims premised on arbitrary and capricious government conduct

and takings claims labeled as equal protection claims are also subject to *Williamson County's* ripeness requirement. *Forseth v. Village of Sussex*, 199 F.3d 363, 370, 373 (7th Cir. 2000). Here, the Board has not made a final decision with respect to the City's code enforcement decision as articulated in the Notice of Correction Order. Thus, there has been no deprivation of property, and consequently, no deprivation of property without due process.

The Tranciks respond that their case fits within an exception to *Williamson County's* ripeness requirement for *bona fide* equal protection claims; that being, allegations establishing "the malicious conduct of a government agent, in other words, conduct that evidences a spiteful effort to 'get' him for reasons unrelated to any legitimate state objective." *Flying J, Inc. v. City of New Haven*, 549 F.3d 538, 543 (7th Cir. 2008).

The Complaint alleges that soon after the Tranciks began laying soil to reestablish the grade of their property, the City issued a stop-work order and later, a notice of correction order including a notice of the right to appeal. An administrative hearing started in February 2012, and was postponed to allow the parties time to mediate the dispute. The hearing resumed in June 2012 after the parties could not agree on the terms of mediation.

Contrary to the Tranciks' position, there is no allegation that the City knowingly failed to provide formal notice of the June 2012 hearing. In fact, the transcript, designated as Exhibit I to the Complaint, reflects that Mayor Brainard expressed concern that the Tranciks did not get formal notice, and granted the motion to continue the

hearing to give counsel time to prepare. (*Id*. at 6, 13). Thus, to the extent the Tranciks were harmed by the failure of the Defendants to provide them timely notice of the June 2012 hearing, Mayor Brainard's decision to continue the hearing rendered any harm a nullity.

Defendants also contend this case is ripe for review because it is clear that Mayor Brainard will rule against them on appeal. It is true that Mayor Brainard asked the Tranciks why they did not make any effort to mediate the dispute; the Tranciks, through their attorney, refused to answer the question. Mayor Brainard expressed frustration at their lack of response, but his frustration was directed at the Tranciks' counsel, not at them personally. (*See, e.g.*, Ex. I at 11-13 (expressing displeasure with the Tranciks' counsel's apparent failure to engage in settlement negotiations with the City, and questioning whether the Tranciks were aware of his refusal to talk to opposing counsel). Further, the record reflects that in December 2012, the Board appointed a neutral hearing officer to rule on their appeal. The actions described above are not the actions of a spiteful and vindictive Board, and do not give rise to an inference that the Defendants are "out to get" the Tranciks. Accordingly, the court finds the Traciks' federal due process and equal protection claims are not ripe for review. Those claims, asserted in Count III, are therefore dismissed.

## IV.  Conclusion

Defendants' Motion to Dismiss (Docket # 6) the Plaintiffs' federal claims is **GRANTED** pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. Pursuant to 28 U.S.C. § 1367 (c), the court declines to exercise supplemental

jurisdiction over Plaintiffs' state law claims.  The balance of Plaintiffs' Complaint is hereby **REMANDED** to the Hamilton Superior Court.

**SO ORDERED** this 26th day of August 2013.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.